# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **B.R. and G.W.**

**No. 21-0185** (Kanawha County 20-JA-350 and 20-JA-610)

## MEMORANDUM DECISION

Petitioner Mother A.R., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's February 12, 2021, order terminating her parental rights to B.R. and G.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and in failing to impose the least-restrictive dispositional alternative.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed an abuse and neglect petition after allegations of domestic violence and other inappropriate conditions came to light during a guardianship proceeding initiated by the maternal grandmother. At the time, B.R. was the only child involved

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner's second assignment of error makes a passing reference to the denial of post-termination visitation with the children. Petitioner's argument in support of this assignment of error, however, fails to include any substantive discussion of the court's denial of post-termination visitation, in violation of Rule 10(c) of the Rules of Appellate Procedure. Because petitioner provides no argument in support of this assertion, we decline to address this issue on appeal.

in the proceedings. According to the petition, the nine-year-old child disclosed witnessing multiple instances of domestic violence between petitioner and her boyfriend, J.W. Child Protective Services ("CPS") initiated an investigation, but petitioner was uncooperative. CPS attempted to visit her home on five separate occasions, all of them unsuccessful. Petitioner participated in a telephone interview, however, during which she denied the allegations of domestic violence. The child made additional allegations regarding the situation in the home, but CPS was unable to substantiate these disclosures because of their inability to inspect the home.

Shortly after the petition's filing, the circuit court ratified the child's emergency removal at the preliminary hearing. During the hearing, the DHHR indicated that petitioner became more cooperative after the child's removal, and CPS was able to confirm that the home was unsuitable upon inspection. According to the DHHR, in addition to being unclean, the home had structural issues, such as missing portions of the ceilings and floors. The home also lacked furniture of any kind, having only an air mattress in the living room. The DHHR admitted photographs of the home's condition during the hearing. Further, petitioner indicated that she was pregnant at the time of the hearing. Ultimately, the court ordered that petitioner participate in drug screens, supervised visitation, and parenting and adult life skills classes.

The following month, the DHHR filed a court summary that indicated that providers' attempts to set up services with petitioner, including visiting her home, took several weeks because of her lack of communication. The DHHR also indicated that petitioner missed two drug screens. That same month, petitioner stipulated to engaging in domestic violence at adjudication, and the circuit court found her to be an abusing and neglecting parent. In the adjudicatory order, the court found that it would consider an improvement period for petitioner after the DHHR reported on the success of her participation in the services already offered. The court reiterated that the DHHR was to provide petitioner with counseling and/or therapy, drug screens, housing assistance, parenting and adult life skills education, prenatal care, and supervised visits contingent on negative screens.

Subsequently, petitioner gave birth to G.W. The child's father is petitioner's boyfriend. The DHHR filed an amended petition to include that child in the proceedings, and the court held hearings on the new petition in anticipation of proceeding to disposition in regard to both children. At a hearing in December of 2020, a DHHR worker testified that petitioner had shown little involvement in her parenting and adult life skills services. According to the witness, petitioner claimed to be "doing most of it on her own" and refused to meet with the provider. The witness further testified that petitioner and her boyfriend were still in a relationship and residing together, despite their history of domestic violence. In fact, the witness indicated that petitioner and her boyfriend hid the birth of G.W. from the DHHR and that the boyfriend told hospital staff "that he would take the new baby and flee." Despite the fact that petitioner was required to notify the DHHR of G.W.'s birth, she did not do so. The children's maternal grandmother testified to disclosures B.R. made, including having woken up one night to petitioner screaming and the boyfriend holding a knife to petitioner's throat. The child also witnessed the boyfriend hit petitioner. Additionally, the child disclosed that the boyfriend physically abused her by smacking her.

Later in December of 2020, the parties held a multidisciplinary team ("MDT") meeting, during which the DHHR and guardian advised petitioner that their recommendation for an improvement period was contingent on petitioner distancing herself from her boyfriend, as he refused to participate in any services. Petitioner agreed to separate from the father and relocate to a shelter. However, after the parties obtained a bed for petitioner, she contacted the DHHR to refuse it. The day after this meeting, petitioner married her boyfriend.

In January of 2021, the circuit court held a dispositional hearing, during which the DHHR presented evidence of petitioner's refusal to separate from her husband despite their history of domestic violence and his stated refusal to participate in services. In fact, petitioner's husband sent an e-mail to a service provider shortly before the dispositional hearing in which he claimed he was not a threat to the children and had done nothing wrong. The DHHR also introduced evidence of petitioner's noncompliance, as she had not been in contact with any DHHR personnel for several weeks. Petitioner testified and minimized the history of domestic violence with her boyfriend/husband. Despite B.R. having consistently described detailed instances of domestic violence, petitioner claimed that these incidents were remote and "mostly verbal." Petitioner's husband also testified that the proceedings were "an utter waste of time. This entire thing is a farce." Petitioner's counselor testified that she was treating petitioner for post-traumatic stress disorder caused by domestic violence and her own childhood abuse. The counselor initially indicated that petitioner had been making progress. The counselor testified, however, that she was not aware that petitioner had recently married and that she believed "that is not the best decision." The counselor also indicated that petitioner's marriage was a "significant matter that . . . should have been disclosed" and would be "something that we will work on." Based on the evidence, the court found that termination of petitioner's parental rights was not only in the children's best interests but was "the only viable alternative." The court based this decision on her failure to fully comply with services; her continued relationship with her husband; and the fact that she was not truthful with her counselor and, in fact, actively concealed her marriage, which presented obstacles to treatment. As such, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, terminated petitioner's parental rights, and denied her post-termination visitation with the children.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[3]The fathers' parental rights were also terminated below. The permanency plan for the children is adoption in the current foster home.

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, she was complying with services and making progress in her treatment such that she could remedy the conditions of abuse and neglect. Petitioner argues that she was benefitting from therapy, and her therapist indicated that petitioner was gaining insight and would be able to protect herself and her children. As such, petitioner argues that additional time was necessary for her to demonstrate improvement. We do not agree.

We have explained that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Here, petitioner could not satisfy this burden for several reasons. At the adjudicatory hearing, the court indicated that it would entertain an improvement period if the DHHR reported that petitioner complied with the services that were already offered. While it is true that petitioner participated in some services, the record as a whole shows that she was generally noncompliant. Indeed, at disposition, petitioner admitted that she refused to submit to drug screens because she had not tested positive and asserted that she did not have a drug problem. The record also demonstrates that petitioner had not been in contact with service providers for several weeks. Further, arguably the most important issue in the proceedings was petitioner's history of domestic violence with her boyfriend. Although petitioner was making progress in therapy designed to address this issue, she also willfully concealed from her therapist the fact that she married her boyfriend. This was in spite of her agreement one day prior to the marriage that she would separate from him, given that he refused to participate in any services designed to remedy the domestic violence. Petitioner relies heavily on the opinion of her therapist that she was progressing in treatment but ignores the fact that she was disingenuous during sessions, ignored the requirement that she separate from her boyfriend, and minimized the serious domestic violence in the home during the dispositional hearing.

As we have explained, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We find no abuse of this discretion, given that petitioner not only failed to fully participate in services below, but worsened her position during the proceedings by marrying her boyfriend one day after agreeing to leave his home. As such, petitioner is entitled to no relief.

This same evidence also supports the circuit court's termination of petitioner's parental rights. On appeal, petitioner argues that she demonstrated that her parenting skills were not

impaired and, thus, should have been entitled to additional time to demonstrate improvement prior to termination of her parental rights. This argument is flawed, however, as the record clearly shows that petitioner's parenting skills were impaired, as demonstrated by the extensive history of domestic violence in the home and petitioner's minimization of its severity and impact on the children. Contrary to petitioner's argument, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Here, petitioner's claims that she would improve if given time are purely speculative, given that she already failed to demonstrate compliance by continuing her relationship with her husband, an individual who expressly refused to participate in any services designed to remedy the conditions of abuse and neglect in the home. Simply put, petitioner's refusal to extricate herself from this relationship—and, in fact, worsening the situation by marrying her abuser—resulted in continued threat of harm to the children if returned to the home.

Based on this evidence, it is clear that termination was appropriate under West Virginia Code § 49-4-604(c)(6), given that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." As made clear above, despite some compliance on her part, petitioner failed to follow through with the reasonable family case plan by not only ignoring the requirement that she end her relationship with her boyfriend, but by taking the affirmative step of marrying him the day after she agreed to this term. As such, it is clear that the circuit court had sufficient evidence upon which to base this finding. Further, the court found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon such findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Importantly, several of petitioner's arguments on appeal illustrate her continued failure to place the children's needs above her own as she suggests that their permanency should have been delayed in order for her to demonstrate improvement. This includes her assertions that termination was inappropriate because the father had not yet been adjudicated or because the children could have been placed in a legal guardianship with the grandmother so that petitioner could later petition for reinstatement of her parental rights. We do not find these arguments availing, however, because the circuit court made the requisite findings to proceed to termination of petitioner's parental rights in the children's best

interests. Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 12, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton